Marc S. Schechter, Bar No. 116190
mschechter@bsllp.com
Corey F. Schechter, Bar No. 279964
cschechter@bsllp.com
BUTTERFIELD SCHECHTER LLP
10021 Willow Creek Road, Suite 200
San Diego, California 92131-1603
(858)444-2300/FAX (858)444-2345

Attorneys for Plaintiff David Wong, in his capacity as Trustee of the Anaplex Corporation Employee Stock Ownership Plan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WONG, in his capacity as Trustee of the Anaplex Corporation Employee Stock Ownership Plan,<br><br>Plaintiff,<br><br>v.<br><br>ESTATE OF BERNARD M. KERPER and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO. 8:18-cv-00894<br><br>COMPLAINT |

Plaintiff David Wong ("Plaintiff" or "Wong"), in his capacity as Trustee of the Anaplex Corporation Employee Stock Ownership Plan ("ESOP" or "Plan"), by and through his undersigned counsel, files this Complaint against the Estate of Bernard M. Kerper ("Defendant" or "Estate"), and Does 1 through 20, inclusive, as follows:

**NATURE OF THE ACTION**

1. This action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and more particularly §§ 1104(a)(1), 1106, 1109, 1132(a)(2), and 1132(a)(3).

**JURISDICTION AND VENUE**

2. This action arises under Title I of ERISA and is brought by Plaintiff to recover damages resulting from fiduciary violations under Title I of ERISA,

and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

3. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4. Venue properly lies in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered within this District, the alleged breaches took place within this District, and/or the Defendant may be found within this District.

## PRELIMINARY STATEMENT

5. Plaintiff, the current Trustee of the ESOP, brings this action against Defendant for harm caused as a result of Mr. Bernard M. Kerper's commission of breaches of fiduciary duties under ERISA by, among other things: (1) failing to act for the exclusive benefit of Plan participants and their beneficiaries; (2) causing the ESOP to pay greater than adequate consideration for company stock of Anaplex Corporation ("Anaplex" or "Corporation"); (3) engaging in a prohibited transaction under ERISA on behalf of the ESOP; and (4) engaging in self-dealing to the detriment of Plan participants and their beneficiaries.

## PARTIES

6. Plaintiff David Wong is the current Trustee of the Anaplex Corporation Employee Stock Ownership Plan. Plaintiff is a fiduciary of the Plan under ERISA § 402(a), 29 U.S.C. § 1102(a), because he is named (*i.e.*, designated) in the Plan document as trustee of the Plan. Plaintiff additionally qualifies as a fiduciary of the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercises discretionary authority or discretionary control respecting management of the ESOP, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP. Mr. Wong brings the claims alleged herein solely in his capacity as Trustee of the ESOP.

/././

7. Defendant Estate of Bernard M. Kerper is the estate of Mr. Bernard M. Kerper ("Kerper" or "Decedent"), who passed away on August 15, 2015. Mr. Kerper is the former trustee of the Anaplex Corporation Employee Stock Ownership Plan, and served in such position until his death. Mr. Kerper was also the sole member of the Board of Directors of Anaplex Corporation until his resignation from such position sometime in 2011. At all times relevant to this Complaint, Mr. Kerper was a fiduciary of the Plan under ERISA § 402(a), 29 U.S.C. § 1102(a), because he was named (*i.e.*, designated) in the Plan document as trustee of the Plan. Mr. Kerper additionally qualifies as a fiduciary of the Plan at all times relevant to this Complaint under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he exercised discretionary authority or discretionary control respecting management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. Furthermore, Mr. Kerper was at all times relevant to this Complaint a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1102(14).

8. Does 1 through 20 are fictitiously name defendants whose true names and identities have not yet been ascertained, but who, upon information and belief, are in some way responsible for the harm alleged by Plaintiff in his Complaint. Once such defendants have been properly identified, Plaintiff will request leave of the Court to amend his Complaint in order to incorporate these defendants using their true names and identities.

**FACTUAL BACKGROUND**

9. Mr. Bernard M. Kerper is the former trustee of the ESOP and former sole member of the Board of Directors of Anaplex. Kerper served as Trustee of the ESOP at all times relevant to this Complaint, and upon information and belief served as a member of the Board of Directors of Anaplex until his resignation sometime in late-2011 but continued to work as a consultant for Anaplex and own shares of Anaplex following his resignation from its Board

1 of Directors until the time of his death.

2     10. Over the years, Mr. Kerper would from time to time instruct employees of Anaplex to issue checks to him or to pay for him certain personal debts, obligations, investments and for other matters, and from time to time Mr. Kerper would personally write checks himself from Anaplex's general checking account for personal debts, obligations, investments and for other matters—thereby treating the corporate bank account of Anaplex as his own personal piggy-bank.

    11. As of the time of Mr. Kerper's death on August 15, 2015, the debt owed by Mr. Kerper to Anaplex was in the approximate principal amount of $1,085,876.29, plus accrued interest thereon from the date of the debt at the legal rate, which amount remains unpaid to Anaplex.

    12. During Mr. Kerper's tenure as trustee of the ESOP, Mr. Kerper entered into several transactions on behalf of the ESOP as its trustee for the ESOP's purchase of Anaplex stock.

    13. In one such transaction, which took place on April 28, 2015 (the "April 28, 2015 Transaction"), Mr. Kerper in his individual capacity sold 10,660 shares of Anaplex stock to Bernard Kerper as Trustee of the ESOP at a price $93.87 per share, for a total purchase price (the "Purchase Price") of $1,000,654.20. A copy of the Stock Purchase Agreement dated April 28, 2015, is attached hereto as Exhibit "A" and is incorporated by reference.

    14. The Purchase Price for the sale and purchase of Anaplex shares in the April 28, 2015 Transaction, was paid by means of a promissory note (the "Promissory Note") from Bernard Kerper as Trustee of the ESOP made payable to Bernard Kerper in his individual capacity. A copy of the Promissory Note dated April 28, 2015, is attached hereto as Exhibit "B" and is incorporated by reference.

/././

15. The Promissory Note mentioned in the preceding paragraph was issued pursuant to an ESOP Loan Agreement dated April 28, 2015 (the "ESOP Loan Agreement"), a copy of which is attached hereto as Exhibit "C" and is incorporated by reference.

16. The Purchase Price for the shares of Anaplex stock in the April 28, 2015 Transaction was based upon a valuation of those shares performed by a qualified independent appraiser[1], Brian Turner ("Turner").

17. Undisclosed, and thus unknown, to Mr. Turner at the time of his appraisal of the shares of Anaplex stock for purposes of the April 28, 2015 Transaction—but well-known to Mr. Kerper who, as trustee of the ESOP and a "party in interest"[2] to the transaction, had a duty to disclose the same to Mr. Turner—was the fact that: (1) those several loans taken by Mr. Kerper from Anaplex totaling a principal amount of approximately $1,000,654.20 were each in default at that time (and thus should not have been considered assets of the Corporation as they were for Mr. Turner's appraisal); and (2) the U.S. Environmental Protection Agency ("EPA") was investigating Anaplex for severe violations of environmental protection laws—which ultimately ended with Anaplex incurring hundreds of thousands of dollars in legal fees in its defense of such investigation, and also being fined hundreds of thousands of dollars by the EPA.

18. No one at Anaplex, nor any interim trustee of the ESOP, was aware of the two facts mentioned in the preceding paragraph until sometime after Mr. Kerper's passing.

/./././

---

[1] Section 6(d) of the ESOP document provides: "The determination of fair market value of Company Stock for all purposes under the Plan shall be made by an independent appraiser who meets the requirements established by [Internal Revenue] Code Section 401(a)(28)(C) and the Income Tax Regulations under Section 170(a)(1) of the Code.
[2] *See* ERISA §3(14); 29 U.S.C. § 1002(14),

19. As a result of Mr. Kerper's failure to disclose the facts that approximately $1,000,654.20 in loans made by Anaplex to Mr. Kerper were in default and that Anaplex was under investigation by the EPA, the fair market value of the shares of Anaplex stock based on Mr. Turner's appraisal was significantly inflated.

20. Based upon the results of Mr. Turner's appraisal (lacking material information known only to Mr. Kerper), the ESOP paid far greater than "adequate consideration" for the shares of Anaplex stock in the April 28, 2015 Transaction.

21. Because no one at Anaplex nor any interim trustee of the ESOP had knowledge of loans in default or the EPA investigation until sometime after Mr. Kerper's passing, it was also unknown until sometime after Mr. Kerper's passing that the ESOP had paid greater than adequate consideration for the shares of Anaplex stock in the April 28, 2015 Transaction.

22. The Stock Purchase Agreement at Paragraph 2(b) thereof provides, in pertinent part:

> In the event that there is a final determination by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the fair market value of the Shares as of [April 28, 2015,] is less than the Purchase Price paid by the Trustee, then the Selling Shareholder shall sell or transfer, as the case may be, to the Trustee an amount of cash, shares of Company Stock or any combination thereof equal in value to the difference between the Purchase Price and said fair market value for all such Shares.

23. The ESOP Loan Agreement at Paragraph 5 thereof contained several representations and warranties made by Bernard Kerper as Trustee of the ESOP. Those representations and warranties provide, in pertinent part:

> (c) The execution, delivery and performance of this Agreement, the [Promissory] Note and the

Security Agreement do not and will not conflict with any law, regulation, rule, order of any court or governmental agency or the documents pursuant to which the Plan was established, by which it is governed or to which it is subject.

…

(d) The [Promissory] Note contemplated hereunder will qualify for the prohibited transaction exemption under Section 4975(d)(3) of the Internal Revenue Code as an "exempt loan" as defined in Section 54.4975-7(b) of the Income Tax Regulations. The purchase price to be paid by Trustee for Shares will not be in excess of "adequate consideration" as defined in Section 3(18) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Said loan, the purchase of the Shares and the entire transaction contemplated hereby will not constitute a prohibited transaction as defined in Section 4975 of the Internal Revenue Code or Section 406 of ERISA.

…

(g) No litigation, investigation or proceeding to which the Plan is a party or which affects the Plan is pending or, to the knowledge of Trustee, threatened by or against the Plan or against any of its property except to the extent that, in the aggregate, such matters would not have a material adverse effect on the Plan or its ability to perform its obligations under this Agreement or the [Promissory] Note.

24. In fact, none of those representations and warranties mentioned in the preceding paragraph were true.

25. Mr. Kerper as Trustee of the ESOP entered into an agreement in which he committed the ESOP to pay far greater than "adequate consideration"[3] for the shares of Anaplex stock being purchased from Mr. Kerper in his

---

[3] ERISA § 3(18), 29 U.S.C. § 1002(18) specifies, "[t]he term 'adequate consideration'…means…in the case of an asset other than a security for which there is a generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan an in accordance with regulations promulgated by the Secretary [of Labor]."

7

Complaint

individual capacity—in violation of applicable laws, regulations, and the ESOP document itself.[4]

26. The ESOP's purchase of shares of Anaplex stock for greater than adequate consideration constitutes a "prohibited transaction" under applicable laws and regulations.

27. The Promissory Note thus did not qualify for the "prohibited transaction exemption" under Section 4975(d)(3) of the Internal Revenue Code or as an "exempt loan" as defined in Section 54.4975-7(b) of the Income Tax Regulations.

28. As a result of the foregoing, the ESOP has been harmed in an amount to be proven at trial and is entitled to an award of attorneys' fees and costs of suit incurred pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

**FIRST CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**[ERISA §§ 404(a), 409, 502(a)(2) and (a)(3);**

**29 U.S.C. §§ 1104(a), 1109, 1132(a)(2) and (a)(3)]**

29. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

30. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and in accordance with the documents and instruments governing the plan insofar as such documents and

---

[4] Section 6(d) of the ESOP document provides: "Purchase of Company Stock by the Trust will be made at a price which, in the judgment of the Committee, does not exceed the fair market value of such Company Stock…as of the date of purchase."

8

Complaint

1  instruments are consistent with the provisions of Title I of ERISA.

2    31. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by Title I of ERISA shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

  32. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary to bring an action for relief under ERISA § 409.

  33. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan fiduciary to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

  34. Mr. Kerper breached his duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) and engaged in self-dealing to the detriment of Plan participants and beneficiaries by, among other things: failing to disclose to the independent appraiser of the shares of Anaplex stock for the April 28, 2015 Transaction certain material facts affecting the value of the Corporation and the fair market value of its stock such as (a) the existence of monetary loans made by Anaplex to Mr. Kerper that were then in default and (b) the fact that Anaplex was then under investigation by the EPA; causing the ESOP to pay greater than adequate consideration for the shares of Anaplex stock in the April 28, 2015 Transaction; and failing to act in accordance with the terms of the ESOP document and other instruments governing the Plan.

  35. Mr. Kerper's acts and omissions have caused hundreds of thousands of dollars in losses to the ESOP in an amount to be proven more specifically at trial.

/././

/././

## SECOND CAUSE OF ACTION

### Engaging In Prohibited Transaction

### [ERISA §§ 406, 409, 502(a)(2) and (a)(3);

### 29 U.S.C. §§ 1106, 1109, 1132(a)(2) and (a)(3)]

36. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

37. ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or "lending of money or other extension of credit between the plan and a party in interest."

38. ERISA § 3(14), 29 U.S.C. § 1002(14) defines the term "party in interest" as to an employee benefit plan for purposes of ERISA as, *inter alia*, "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian) … of such employee benefit plan." ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

39. Mr. Kerper, at all times relevant to this Complaint, was a party in interest to the ESOP because he was a fiduciary (*i.e.*, the trustee) of the ESOP.

40. Typically, if an ERISA-governed employee benefit plan engages in a transaction which constitutes a direct or indirect "sale or exchange, or leasing of any property between the plan and a party in interest," or "lending of money or other extension of credit between the plan and a party in interest," that is considered to be a prohibited transaction under ERISA. *See* ERISA § 406(a), 29 U.S.C. § 1106(a), *supra*.

41. If a fiduciary of an ERISA-governed plan causes such plan to engage in a prohibited transaction under ERISA, then they have engaged in a breach of fiduciary duty under ERISA.

/././

42. ERISA § 408, 29 U.S.C. § 1108, enumerates several exemptions from the prohibition of certain transactions which would ordinarily constitute prohibited transactions under ERISA.

43. Among the exemptions from prohibited transactions enumerated in ERISA § 408 are transactions involving a direct or indirect (a) sale or exchange, or leasing of any property between the plan and a party in interest, or (b) lending of money or other extension of credit between the plan and a party in interest, "*but only if in connection with such transaction the plan* receives no less, nor *pays no more, than adequate consideration*."[5] ERISA § 408(b)(17)(A), 29 U.S.C. § 1108(b)(17)(A) (emphasis added).

44. Yet another exemption from the prohibited transactions enumerated in ERISA § 406 provides that, "Section[ ] 1106…of [Title I of ERISA] shall not apply to the acquisition or sale by a plan of qualifying employer securities [(*e.g.*, company stock)]…*if such acquisition*, sale, or lease is *for adequate consideration*[.]" ERISA § 408(e)(1), 29 U.S.C. § 1108(e)(1) (emphasis added).

45. The April 28, 2015 Transaction constitutes a direct or indirect "sale or exchange, or leasing of any property between the plan and a party in interest," and "lending of money or other extension of credit between the plan and a party in interest."

46. Because the April 28, 2015 Transaction constitutes a direct or indirect "sale or exchange, or leasing of any property between the plan and a party in interest," and "lending of money or other extension of credit between the

---

[5] "Adequate consideration" for purposes of that provision is defined as, "in the case of an asset other than a security for which there is a generally recognized market, the *fair market value* of the asset as determined in good faith by a fiduciary or fiduciaries in accordance with regulations prescribed by the Secretary [of Labor]." ERISA § 408(b)(17)(B)(ii), 29 U.S.C. § 1108(b)(17)(B)(ii) (emphasis added). As previously noted, Section 6(d) of the ESOP document provides: "The determination of fair market value of Company Stock for all purposes under the Plan shall be made by an independent appraiser who meets the requirements established by [Internal Revenue] Code Section 401(a)(28)(C) and the Income Tax Regulations under Section 170(a)(1) of the Code.

plan and a party in interest," it is a prohibited transaction under ERISA unless one of the enumerated exemptions applies.

47. None of the enumerated exemptions from prohibited transactions apply to the April 28, 2015 Transaction because the ESOP paid greater than adequate consideration for the shares of Anaplex stock which it purchased in the April 28, 2015 Transaction.

48. By allowing the ESOP to pay greater than adequate consideration to a party in interest for the shares of Anaplex stock which it purchased in the April 28, 2015 Transaction, Mr. Kerper as Trustee of the ESOP engaged in a prohibited transaction by entering into the April 28, 2015 Transaction on behalf of the ESOP.

49. ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries[.]"

50. Because the only two parties to the April 28, 2015 Transaction were Mr. Kerper in his capacity as Trustee of the ESOP (*i.e.*, the buyer), and Mr. Kerper in his individual capacity (*i.e.*, the seller), Mr. Kerper therefore acted on behalf of a party (i.e., himself as the seller) whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries in a transaction involving the Plan where the Plan paid greater than adequate consideration for the shares of Anaplex stock which it purchased—which is yet another prohibited transaction under ERISA engaged in by Mr. Kerper.

51. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by Title I of ERISA shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and additionally is subject to such other

equitable or remedial relief as the court may deem appropriate.

52. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary to bring an action for relief under ERISA § 409.

53. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan fiduciary to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

54. Mr. Kerper has caused hundreds of thousands of dollars in losses to the ESOP by engaging in prohibited transactions in an amount to proven more specifically at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant on each Cause of Action and for the following relief:

**As to the First Cause of Action:**

55. Declare that Mr. Kerper breached his fiduciary duties to the ESOP and its participants and beneficiaries;

56. Order that Defendant make good to the ESOP and/or any successor trust(s) the losses resulting from Mr. Kerper's breaches;

57. Order that Defendant provide other appropriate equitable relief to the ESOP, including, but not limited to, providing an accounting for profits, surcharge, reducing the value of the Promissory Note to reflect the fair market value of shares of Anaplex stock acquired in the April 28, 2015 Transaction as of April 28, 2015 as the amount owed on the Promissory Note less any amounts already paid by the ESOP to reduce the amount owed on the Promissory Note, and offsetting such modified value of the Promissory Note by amounts still due and owing to Anaplex by Mr. Kerper from the several loans taken by him from Anaplex totaling in excess of $1,000,000.00;

58. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

13

Complaint

59. Order Defendant to pay prejudgment interest; and

60. Award such other and further relief as the Court deems equitable and just.

**As to the Second Cause of Action:**

61. Declare that Mr. Kerper breached his fiduciary responsibilities and/or duties as a party in interest;

62. Declare that Mr. Kerper caused the ESOP to engage in prohibited transactions in violation of ERISA §§ 406(a) and 406(b), 29 U.S.C. §§ 1106(a) and 1106(b);

63. Order that Defendant make good to the ESOP and/or any successor trust(s) the losses resulting from Mr. Kerper's breaches;

64. Order that Defendant provide other appropriate equitable relief to the ESOP, including, but not limited to, providing an accounting for profits, surcharge, reducing the value of the Promissory Note to reflect the fair market value of shares of Anaplex stock acquired in the April 28, 2015 Transaction as of April 28, 2015 as the amount owed on the Promissory Note less any amounts already paid by the ESOP to reduce the amount owed on the Promissory Note, and offsetting such modified value of the Promissory Note by amounts still due and owing to Anaplex by Mr. Kerper from the several loans taken by him from Anaplex totaling in excess of $1,000,000.00;

65. Order Defendant to disgorge any profit Mr. Kerper (or his estate) gained from the prohibited transaction to the ESOP, impose a constructive trust upon the profits earned by Mr. Kerper (or his estate) from violations of fiduciary obligations and duties as a party in interest, order an accounting for profits by Defendant, trace the ESOP assets received by Mr. Kerper (or his estate), and/or order other appropriate equitable relief;

66. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

67. Order Defendant to pay prejudgment interest; and

68. Award such other and further relief as the Court deems equitable and just.

DATED: May 22, 2018            BUTTERFIELD SCHECHTER LLP


By: /s/Marc S. Schechter
    MARC S. SCHECHTER
    COREY F. SCHECHTER
    Attorneys for Plaintiff
    David Wong, in his capacity as Trustee
    of the Anaplex Corporation Employee
    Stock Ownership Plan