EXHIBIT "A"

# ESOP
# STOCK PURCHASE AGREEMENT

THIS AGREEMENT is entered into this 28th day of April, 2015, by and between Bernard Kerper, as trustee of the Anaplex Corporation Employee Stock Ownership Plan (hereinafter referred to as "Trustee"), and Bernard Kerper (hereinafter referred to as "Selling Shareholder").

## WITNESSETH:

WHEREAS, Trustee is the trustee of the Anaplex Corporation Employee Stock Ownership Plan (hereinafter referred to as "Plan") established by the Company and is intended to be qualified as an employee stock ownership plan as defined in Section 4975(e)(7) of the Internal Revenue Code, as a stock bonus plan under Section 401(a) of the Internal Revenue Code, and exempt from income tax under Section 501(a) of the Internal Revenue Code; and

WHEREAS, the Selling Shareholder is the owner of Ten Thousand Six Hundred Sixty and 00/100 (10,660) shares of common stock of the Company (the "Shares"); and

WHEREAS, the Trustee, at the direction of the ESOP Committee, wishes to purchase from the Selling Shareholder, and the Selling Shareholder wishes to sell to Trustee, said Shares, for the benefit of Employees of the Company who are participants in the Plan; and

WHEREAS, the parties desire to design said purchase and sale so that the Selling Shareholder, if he so elects, will be entitled to the benefits of Section 1042 of the Internal Revenue Code; and

WHEREAS, the Company desires to provide a means for the Participants in the Plan to acquire a proprietary interest in it as an incentive for them to advance the business and affairs of the Company.

- 1 -

NOW, THEREFORE, in consideration of the premises and the respective agreements hereinafter set forth, in this Agreement, the Selling Shareholder and Trustee hereby agree as follows:

1. <u>Sale of Common stock</u>.  As of this date and subject to the terms and conditions of this Agreement, the Selling Shareholder does hereby sell and deliver to Trustee, and Trustee does hereby purchase from the Selling Shareholder, the Shares.

2. <u>Purchase Price</u>.

    (a) In consideration for the transfer of shares as provided in Section 1, the Trustee shall pay to the Selling Shareholder an amount equal to Ninety Three and 87/100 Dollars ($93.87) per share, or a total of One Million Six Hundred Fifty Four and 20/100 Dollars ($1,000,654.20), (hereinafter referred to as "Purchase Price").  The Purchase Price shall be paid with a Promissory Note of One Million Six Hundred Fifty Four and 20/100 Dollars ($1,000,654.20).

    (b) In the event that there is a final determination by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the fair market value of the Shares as of this date is less than the Purchase Price paid by the Trustee, then the Selling Shareholder shall sell or transfer, as the case may be, to the Trustee an amount of cash, shares of Company Stock or any combination thereof equal in value to the difference between the Purchase Price and said fair market value for all such Shares.  In the event that cash and/or shares of Company Stock are paid and/or transferred to the Trustee under this provision, shares of Company Stock shall be valued at their fair market value as of the date of said purchase and interest at a reasonable rate from the date of purchase to the date of payment shall be paid by Selling Shareholder on the amount of cash paid.

3.  <u>Representations and Warranties of Selling Shareholder</u>. The Selling Shareholder, to induce the Trustee to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a) The Selling Shareholder is the owner, free and clear of any encumbrances, of the Shares being sold hereunder and has the right and power to enter into this Agreement and to perform the same, and is not a party to or obligated under or restricted by any contract or other provision which might be violated by making and performing this Agreement.

(b) If the Selling Shareholder elects to adopt Section 1042 of the Internal Revenue Code, the Selling Shareholder must be owner of the Shares of the Company for more than three (3) years from the date of this agreement, and must not have received the Shares as a distribution from a plan qualified under Section 401(a) of the Internal Revenue Code or pursuant to an option or other right to acquire stock to which Sections 83, 422, 422A, 423 or 424 of the Internal Revenue Code applies. The aforementioned three (3) year holding period only applies to the Selling Shareholder who elects to adopt Internal Revenue Code Section 1042.

(c) If the Selling Shareholder elects to adopt Section 1042 of the Internal Revenue Code, then such Selling Shareholder will file with the Internal Revenue Service the appropriate elections to have Section 1042 of the Internal Revenue Code apply to the sale of Shares contemplated hereby. Said election shall be filed not later than the last day prescribed by law (including extensions thereof) for filing the Selling Shareholder's federal income tax return for the taxable year in which the sale occurs and the Selling Shareholder shall deliver to the Company a copy of such elections not later than the date on which the Selling Shareholder files his federal income tax return for such taxable year.

(d) If the Selling Shareholder elects to adopt Section 1042 of the Internal Revenue Code, then such Selling Shareholder shall purchase "qualified replacement property" within the "replacement period" as those terms are defined in Section 1042(c) of the Internal Revenue Code.

4. <u>Representations and Warranties of Company</u>. The Company, to induce the Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a) The Company is a corporation duly organized and existing and in good standing under the laws of the State of California, having the corporate power to carry on its business as it is now being conducted and is duly qualified to do business and is in good standing in all other states where it is doing business.

(b) On the date of this Agreement the Shares of Company stock to be sold hereunder will be validly issued and outstanding, fully paid and non-assessable without any liens or encumbrances whatsoever upon or against such shares; and there will be in existence no limitations or restrictions of any kind on the right of the Selling Shareholder to sell such Shares in accordance with the terms hereof. No options, warrants, agreements, or similar rights created by the Company for the issue or sale of any stock or securities of any kind or for the purchase thereof by any person other than the Trustee will then be in existence.

(c) Immediately after the purchase of the Shares by Trustee as contemplated in this transaction and others, the Trustee will own over thirty percent (30%) of the then outstanding "employer securities" of the Company, as that term is defined in Section 409(l) of the Internal Revenue Code.

(d) In the event the Selling Shareholder makes an election under Section 1042 of the Internal Revenue Code, none of the Shares to be purchased by Trustee hereunder will be allocated under the Plan to the accounts of or for the benefit of the Selling Shareholder, any person who is a member of the family of the Selling Shareholder (within the meaning of Section 267(c)(4) of the Internal Revenue Code), or any other person who owns (after application of Section 318(a) of the Internal Revenue Code) more than twenty-five percent (25%) in value of any class of outstanding "employer securities" of the Company. In the administration of the Plan, the Company will comply with the requirements of Section 409(n) of the Internal Revenue Code.

- 4 -

(e) Upon execution of this Agreement, or as soon thereafter as is reasonably practical, the Company shall execute and deliver to the Selling Shareholder the verified written statements required by Section 1042(b)(3) of the Internal Revenue Code pursuant to which the Company consents to the application of Section 4978(a) and 4979A of the Internal Revenue Code in the event that either (i) the Trustee disposes of any of the Shares during the three (3) year period from the date of purchase, other than as a distribution to Participants or otherwise as described in said Section 4978(a), or (ii) there is a prohibited allocation, as defined by Section 4979A of the Internal Revenue Code.

5. Representations and Warranties of Trustee. The Trustee, to induce the Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a) Trustee is trustee of the Plan pursuant to an Agreement validly created and existing under the laws of the State of California;

(b) Trustee has full power and is duly authorized by law and the Trust Agreement to obligate itself to pay moneys for lawful trust purposes, including specifically but not in limitation thereof, for the purpose of acquiring capital stock of the Company;

(c) Proper action has been taken by Trustee to authorize the execution of this Agreement and of any and all agreements or instruments necessary to effectuate the transactions contemplated hereby.

6. Obligations of Trustee. The Selling Shareholder understands and agrees that the execution by the Trustee of this Agreement and of any other instrument or agreement in connection herewith are done in Trustee's capacity as Trustee of the Plan and under and pursuant to the instructions and authorization provided for under the Trust Agreement pursuant to which the Trust was created and that the obligations and liabilities of Trustee in connection therewith are limited to the assets of the Trust.

7.     <u>Indemnification of Trustee by Selling Shareholder</u>.  The Selling Shareholder agrees to indemnify and hold harmless Trustee from any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character resulting or arising therefrom or resulting from or arising out of the breach of any representation, agreement or warranty made by the Selling Shareholder under or pursuant to this Agreement.

8.     <u>Survival of Representations, Warranties and Agreements</u>. All statements contained in any certificate, opinion or other instrument delivered by or on behalf of any party pursuant hereto or in connection with the transactions and warranties by said party herein shall survive the execution of this Agreement.  All representations and warranties shall survive the execution of this Agreement and any investigation at any time made by or on behalf of any party hereto.  Any party against whom a claim shall arise after the execution hereof shall be notified promptly in writing of any such claim.

9.     <u>Notices, etc.</u>  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed by registered or certified mail to the addresses herein designated or at such other address as may be designated in writing by notice given by registered or certified mail to the other parties:

If to the Selling Shareholder:

BERNARD KERPER

204 North Lake Drive

Watertown, South Dakota 57201

If to the Trustee:

>BERNARD KERPER AS TRUSTEE
>of the Anaplex Corporation
>Employee Stock Ownership Plan & Trust
>
>204 North Lake Drive
>
>Watertown, South Dakota 57201

If to the Company, at:

>ANAPLEX CORPORATION
>
>15547 Garfield Avenue
>
>Paramount, California 90723
>
>Attention: Carmen Campbell, President

10. <u>Amendments and Entire Agreement</u>. This instrument contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby, and may be changed or modified only by an instrument duly executed by the parties hereto.

11. <u>Parties in Interest</u>. This Agreement shall inure to the benefit of and be binding upon the parties named herein and their respective successors and assigns; nothing in this Agreement, expressed or implied, is intended to confer upon any other person any rights or remedy under or by reason of this Agreement.

12. <u>California Law to Govern</u>. This Agreement shall be construed and governed in accordance with the laws of the State of California.

13.     Section and Other Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the interpretation or meaning of this Agreement.

14.     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

- 8 -

605-378-0126    p.4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

SELLING SHAREHOLDER:    BERNARD KERPER

By _[signature]_
Bernard Kerper

TRUSTEE:    BERNARD KERPER
as Trustee of the Anaplex Corporation
Employee Stock Ownership Plan & Trust

By _[signature]_
Bernard Kerper

COMPANY:    ANAPLEX CORPORATION
a California corporation

By _[signature]_
Carmen Campbell - President

[SEAL]

- 9 -

605-878-0126          p.5

## CONSENT OF SPOUSE

I certify that:

1. I am the spouse of Bernard Kerper,

2. I have read and approve the provisions of the Stock Purchase Agreement.

3. I agree to be bound by and accept the provisions of the Stock Purchase Agreement in lieu of all other interests I may have in the shares subject to such Agreement, whether the interest may be community property or otherwise.

Executed effective as of April 28, 2015.

*Donette Katherine Flynn-Kerper*
Spouse of Bernard Kerper

- 10 -