

EXHIBIT "C"

# ANAPLEX CORPORATION
# ESOP LOAN AGREEMENT

THIS AGREEMENT (hereinafter referred to as "Agreement"), entered into at Paramount, California, on this 28th day of April, 2015, by and between **BERNARD KERPER** (hereinafter referred to as "Selling Shareholder"), and **BERNARD KERPER**, as trustee of the **ANAPLEX CORPORATION EMPLOYEE STOCK OWNERSHIP PLAN** (hereinafter referred to as the "Trustee").

## W I T N E S S E T H:

**WHEREAS**, Trustee, at the direction of the ESOP Committee, wishes to purchase shares of the Company's Common Stock for the benefit of the participants in the **ANAPLEX CORPORATION EMPLOYEE STOCK OWNERSHIP PLAN** (hereinafter referred to as the "ESOP"); and

**WHEREAS**, the Shareholder of the Company is willing to sell Ten Thousand Six Hundred Sixty and 00/100 (10,660) shares of common stock (hereinafter referred to as the "Total Shares") of the Company; and

**WHEREAS**, Trustee desires to purchase the Total Shares; and

**WHEREAS**, the Trustee has issued a Note in an amount sufficient to enable the Trustee to purchase Ten Thousand Six Hundred Sixty and 00/100 (10,660) of the Total Shares, (hereinafter referred to as the "Shares"); and

**NOW, THEREFORE**, in consideration of the mutual covenants, representations, warranties and recitations contained herein, the parties hereto agree as follows:

1. <u>Promissory Note</u>.  The indebtedness of the Trustee to the selling Shareholder shall be evidenced by a Promissory Note dated of even date herewith, and incorporated herein by reference (hereinafter "Promissory Note" or "Note"), the terms of which shall provide for repayment as described therein.

2. <u>Security Agreement</u>. To secure payment of the Note, Trustee shall grant to selling Shareholder a security interest in the Shares in favor of the selling Shareholder pursuant to the terms of the Security Agreement of even date herewith, and incorporated herein by reference (hereinafter the "Security Agreement").

3. <u>Rate of Interest</u>. The interest rate will be 3.25% and will be paid no later than annually for a period of no longer than ten (10) years. The first interest payment is due no later than April 28, 2016. The following payments are due no later than May 29th of each year thereafter through, to and including April 28, 2025. Any remaining unpaid interest will be due and payable in full on April 28, 2025.

4. <u>Principal Payments.</u> Are to be repaid no later than annually for a period of no longer than ten (10) years. The first principal payment is due no later than April 28, 2016. The following payments are due no later than April 28th of each year thereafter through, to and including April 28, 2025. Any remaining unpaid principal will be due and payable in full on April 28, 2025.

5. <u>Representations and Warranties by Trustee</u>. In order to induce the selling Shareholder to accept the Note herein provided for, Trustee hereby represents and warrants as follows:

    (a) The Plan (i) is an employee retirement trust duly organized and validly existing under the laws of the State of California, (ii) has the power, authority and legal right to act under and administer the Plan for the benefit of its Participants, (iii) is an employee stock ownership plan which meets the requirements of Section 4975(e)(7) of the Internal Revenue Code and Section 54.4975-11 of the Income Tax Regulations, and (iv) is in compliance with the Plan documents, any other governing documents and all laws, regulations, rules and other requirements of law except to the extent that the failure to comply therewith could not, in the aggregate, have a material adverse effect on the Plan or its ability to perform its obligations under this Agreement or the Note.

    (b) The Plan has the power, authority and legal right to enter into and perform this Agreement and has taken all necessary action to authorize the borrowing on the terms and conditions specified herein and to authorize the execution, delivery and performance of this Agreement, the Notes and the Security Agreement. Trustee is the duly

appointed trustee of the Plan and is authorized, on behalf of the Plan, to execute, deliver and perform this Agreement, the Note and the Security Agreement.

(c) The execution, delivery and performance of this Agreement, the Note and the Security Agreement do not and will not conflict with any law, regulation, rule, order of any court or governmental agency or the documents pursuant to which the Plan was established, by which it is governed or to which it is subject. This Agreement, the Note and the Security Agreement constitute or will constitute legal, valid and binding obligations of the Plan enforceable against the Plan in accordance with their respective terms, except to the extent that enforceability may be limited by applicable bankruptcy, insolvency, reorganization and similar laws affecting the enforcement of creditors' rights.

(d) The Note contemplated hereunder will qualify for the prohibited transaction exemption under Section 4975(d)(3) of the Internal Revenue Code and as an "exempt loan" as defined in Section 54.4975-7(b) of the Income Tax Regulations. The purchase price to be paid by Trustee for Shares will not be in excess of "adequate consideration" as defined in Section 3(18) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Said loan, the purchase of the Shares and the entire transaction contemplated hereby will not constitute a prohibited transaction as defined in Section 4975 of the Internal Revenue Code or Section 406 of ERISA.

(e) The amount of the Note shall be used by Trustee to purchase the Shares for the Plan, which Shares of "employer securities" as defined in Section 409(l) of the Internal Revenue Code.

(f) Except for the security interest created pursuant to the Security Agreement, the Shares, when purchased, will be free and clear of all liens, encumbrances, security interests, pledges and restrictions thereon.

(g) No litigation, investigation or proceeding to which the Plan is a party or which affects the Plan is pending or, to the knowledge of Trustee, threatened by or against the Plan or against any of its property except to the extent that, in the aggregate, such matters would not have a material adverse effect on the Plan or its ability to perform its obligations under this Agreement or the Note.

(h) The Plan is not in default under or with respect to any agreement, instrument or undertaking which could reasonably be expected to have a material adverse effect upon the Plan or its ability to perform its obligations under this Agreement or the Note.

(i) The Note may be prepaid by the amount of any company contribution or dividends paid on the shares acquired pursuant to the Note in excess of the amount necessary to pay the regularly scheduled payments of principal and interest on the Note.

6.  General Provisions.

(a)  This Agreement contemplates the entire agreement between the parties pertaining to the subject matter herein and supersedes all prior agreements, representations and understandings of the parties, either oral or written. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all the parties. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding, unless executed in writing by the party making the waiver.

(b)  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

(c)  This Agreement shall be binding on, and shall inure to the benefit of the parties to it and their respective heirs, successors and assigns.

(d)  All notices, offers, acceptances, waivers and other acts under this Agreement shall be in writing and shall be sufficiently given if either delivered in person or mailed by certified or registered mail, postage prepaid, to the parties at such addresses as each of them, by notice to the other, may designate from time to time. Any written document will be deemed delivered either on the day of delivery in person or two (2) days after the mailing of such document.

(e)  The laws of ERISA and the laws of the State of California (if such State laws are not preempted by ERISA) shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties.

605-878-0126         p.1

IN WITNESS WHEREOF, the parties have duly executed this Agreement on April 28, 2015, as above written.

ACCEPTED BY:

SELLING SHAREHOLDER:

By _____
Bernard Kerper

TRUSTEE OF THE ANAPLEX CORPORATION
EMPLOYEE STOCK OWNERSHIP PLAN

By _____
Bernard Kerper, Trustee

- 5 -

EXHIBIT C
32